RECEIVED
6/21/2021
Tony R. Moore, Clerk
Western District of Louisiana
Shreveport, Louisiana
By: tzd

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF LOUISIANA

IN RE: HURRICANE LAURA AND HURRICANE DELTA CLAIMS

EXHIBIT "A"
TO
CASE MANAGEMENT ORDER NO. 1

INITIAL DISCOVERY PROTOCOLS FOR POST-DISASTER
FIRST-PARTY PROPERTY INSURANCE DISPUTES
IN 2020 HURRICANE CASES
THIS ORDER APPLIES TO ALL RELATED CASES

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF LOUISIANA

| [          ], | § | |
|---|---|---|
| | § | |
| | § | |
| | § | |
| Plaintiff[s], | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| [          ], | § | |
| [          ], | § | |
| | § | |
| Defendant[s]. | § | |

**ORDER FOR FIRST-PARTY INSURANCE PROPERTY
DAMAGE CASES ARISING FROM 2020 HURRICANES**

This court is implementing the **INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM DISASTERS**. These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to all cases involving first-party insurance property damage claims arising from Hurricane Laura or Hurricane Delta ("Hurricane Cases").

Parties and counsel must comply with the Disaster Protocols attached to this Order. If any party believes that there is good cause why a particular case should be exempted from the Disaster Protocols, in whole or in part, that party may raise the issue with the court.

Within 45 days after the defendant's submission of a responsive pleading or motion, the parties must provide to one another the documents and information described in the Disaster Protocols for the relevant time period. This obligation supersedes the parties' obligations to provide initial disclosures under FRCP 26(a)(1). The parties must use the documents and information exchanged under the Disaster Protocols to prepare the FRCP 26(f) discovery plan.

1

The parties' responses to the Disaster Protocols must comply with FRCP 26(e) on supplementation and with FRCP 26(g) on certification of responses. As stated in the Protocols, this Initial Discovery is not subject to objections, except on the grounds of attorney-client privilege or work-product protection, including a joint defense agreement. Documents or information withheld based on an attorney-client privilege or work- product protection claim are subject to FRCP 26(b)(5).

SIGNED on this 21st day of June, 2021, at Lafayette, Louisiana.

                                          Hon. James D. Cain, Jr.
                                          United States District Judge

# **INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM 2020 HURRICANES**

**PART 1: INTRODUCTION AND DEFINITIONS.**

(1) Statement of purpose.

    a. These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to cases involving first-party insurance property damage claims arising from man-made or natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

    b. Participating courts may implement the Disaster Protocols by local rule or by standing, general, or individual-case orders. Although the Disaster Protocols are designed for the full range of case size and complexity, if any party believes that there is good cause why a case should be exempted, in whole or in part, from the Disaster Protocols, that party may raise the issue with the court.

    c. The Federal Rules of Civil Procedure ("FRCP") referred to in the Disaster Protocols apply to Disaster Cases in federal court.

    d. The Disaster Protocols are intended to supersede the parties' obligations to make initial disclosures under FRCP 26(a)(1) for Disaster Cases. The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by those rules or other applicable local federal rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

    e. Except as modified by the court, the Disaster Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every Disaster Case ("Initial Discovery"). This Initial Discovery is unlike initial disclosures under FRCP 26(a)(1) because it includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues requiring further litigation

(2) Definitions. The following definitions apply to cases under the Disaster Protocols.

    a. ***Claimed Loss.*** "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

3

b. ***Document.*** "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(1)(A). A draft of a document or a nonidentical copy is a separate document.

c. ***Event.*** "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d. ***Identify (Documents).*** When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e. ***Identify (Natural Persons).*** When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. ***Identify (Non-Natural Persons or Entities).*** When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g. ***Insurer.*** "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h. ***Insured.*** "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i. ***Loss.*** "Loss" means damage to the Property caused by the Event.

j. ***NFIP Claim.*** "NFIP Claim" means a claim the Insured asserts in the litigation for coverage under a National Flood Insurance Program insurance policy.

k. ***Other Insurance.*** "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

l. ***Policy.*** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

    m. ***Property.*** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

    n. ***Relating to.*** "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

    a. The relevant time period for this Initial Discovery begins on the date immediately before the Event and ends 15 days prior to mediation, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below. The first disclosure is due 45 days from the date the defendant files responsive pleadings. A supplemental disclosure must be made 15 days prior to the mediation.

    b. This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to FRCP 26(b)(5). A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the court orders or the applicable rules require.

    c. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

    d. For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to FRCP 26(e) on supplementation and to FRCP 26(g) on certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

    e. This Initial Discovery is subject to FRCP 34(b)(2)(E) on the form of production.

    f. This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

    g. Within 14 days after the entry of this Order, the Parties will meet and confer on the format (e.g., TIFF/text, searchable pdf, or Excel) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial

Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

### PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

(1) Timing.
Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 20 days of the denial of a timely motion to remand if that date is later, or within 20 days of the date of this Order if that date is later.

(2) Information to be produced by the Insured:

a. A description of the Insured's ownership or other interest in the Property.

b. The address of the Property (or location of movable Property) on the date of the Event.

c. The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d. Identify any current mortgagee or other known lien holder.

e. A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

f. Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g. Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h. Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

i. With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

j. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

k. A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

<ol type="a" start="12">
<li>A general description of any known preexisting damage to the Property relating to the Claimed Loss.</li>
<li>A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.</li>
<li>Identify any sale, transfer, or foreclosure of the Property after the Event.</li>
</ol>

(3) Complete and unaltered copies of the following documents to be produced by the Insured:

<ol type="a">
<li>Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.</li>
<li>Proofs of loss for the Claimed Loss.</li>
<li>Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.</li>
<li>Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.</li>
<li>Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.</li>
<li>Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.</li>
<li>The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.</li>
<li>Appraisals or surveys of the Property condition within five years before, or any time after, the Event.</li>
<li>If there has been an appraisal under the Policy, documents relating to the appraisal process.</li>
<li>**For NFIP Claims**, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.</li>
<li>**For NFIP Claims**, documents relating to an administrative appeal under 44 C.F.R. § 62.20.</li>
<li>Any other document(s) on which the Insured relies to support the Claimed Loss.</li>
</ol>

7

**PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.**

(1) Timing.

(2) Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 20 days of the denial of a timely motion to remand if that date is later, or within 20 days of the date of this Order if that date is later. The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

(3) Information to be produced by the Insurer:
   a. **If there is a dispute over coverage**, in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:
      i. Any exclusions or exceptions, or other coverage or legal defenses;
      ii. The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;
      iii. Whether there is also a dispute as to the value or amount of the Claimed Loss;
      iv. Any other basis on which coverage was denied.
   b. **If there is a dispute over all or part of the valuation**, an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:
      i. The Insurer's understanding of the nature of the dispute;
      ii. The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and
      iii. The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.
   c. Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.
   d. Any payments previously made under the Policy relating to the Event.
   e. A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.
   f. Any other Event-related lawsuits filed for the Property or the Insured.
   g. Identify the adjuster(s) who handled the claim.
   h. Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

8

      i. Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

      j. If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4) Complete and unaltered copies of the following documents to be produced by the Insurer:

      a. The entire claim file maintained by the Insurer.

      b. The complete Policy in effect at the time of the Event.

      c. Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

      d. Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

      e. Any other evaluations of the Claimed Loss.

      f. Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

      g. Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

      h. The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

      i. Proofs of loss for the Claimed Loss.

      j. If there has been an appraisal under the Policy, all documents relating to the

   appraisal process.

k. Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane Laura claims generally when the Claimed Loss relates to Laura, Hurricane Delta claims generally when the Claimed Loss relates to Delta, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l. **For non-NFIP Claims**, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m. **For NFIP Write Your Own Claims**, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

n. **For NFIP Direct Claims**, written communications exchanged between the Insured and FEMA claims-handling personnel referring to the Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

o. **For all NFIP Claims**, documents relating to the administrative appeal under 44 C.F.R. § 62.20.

p. Any other document(s) on which the Insurer relies to support its defenses.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| [          ], | § § § § § | |
| Plaintiff[s], | § | |
| VS. | § § | CIVIL ACTION NO. _____ |
| [          ], | § | |
| [          ], | § § | |
| Defendant[s]. | § § | |

## INTERIM PROTECTIVE ORDER

The Initial Discovery Protocols for First-Party Insurance Property Damage Cases Arising from Disasters are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. The Interim Protective Order will remain in place until the parties agree to, or the court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to subsequent discovery. The parties may agree to use the Interim Protective Order throughout litigation.

The Court orders that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

11

3. If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4. Information or documents designated as "Confidential" must not be disclosed to any person, except:

    a. the requesting party and counsel, including in-house or agency counsel;

    b. employees of counsel assigned to and necessary to assist in the litigation;

    c. consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

    d. any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information; and

    e. The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury.

    f. The Special Master, Deputy Special Master, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5. Before disclosing or displaying Confidential Information to any person, a party must:

    a. inform the person of the confidential nature of the information and documents; and

    b. inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6. The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form attached as Exhibit 1. If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7. The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8. Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.

9. At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information, under FRE 502(d).

This Order does not diminish the right of any party to apply to the court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order and the court may sanction violations.

SIGNED on this 21st day of June, 2021, at Lafayette, Louisiana.

_____
Hon. James D. Cain, Jr.
United States District Judge

## EXHIBIT 1

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled _____ have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.

_____   DATED:

Signed in the presence of:


_____

(Attorney)